UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                          Case No.: 13-71700-ast

Richard Kern,                                                   Chapter 7

                                    Debtor.
-----------------------------------------------------------X
Board of Trustees of the Sheet Metal
Workers International Association
Local Union No. 28 Trust Funds,

                        Plaintiffs,                              Adv. Proc. No.: 13-08177-ast

            -against-

Richard Kern,

                        Defendant.
-----------------------------------------------------------X

**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

### *Issues Presented and Summary of Ruling*

The Plaintiffs are the Board of Trustees of certain benefit funds established under the

framework of ERISA.  Defendant Richard Kern was the principal owner and control person of a

closely held company which employed union members who were entitled to have contributions

made on their behalf to the benefit funds and their union for at least three different purposes, which

contributions were deducted from their employee paychecks.  The Court has determined on

summary judgment that certain but not all of the monies deducted from the employee paychecks

give rise to non-dischargeable debts pursuant to § 523(a)(4) of the Bankruptcy Code; specifically,

monies deducted for a vacation fund is non-dischargeable because those funds were subject to a

statutory trust, Debtor acted as a fiduciary, and Debtor committed a defalcation when he did not

1

remit such deducted monies to the benefit funds; however, monies deducted for union assessments and political action league funds are dischargeable because a statutory trust did not exist as to such monies.

## JURISDICTION AND AUTHORITY TO ENTER A FINAL ORDER

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), and (O), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.  Furthermore, this Court has the authority to enter a final order in this non-dischargeability action.  *See VW Credit, Inc. v. Salim (In re Salim)*, No. 13-42974 (ESS), Adv. No. 13-01442 (ESS), 2015 Bankr. LEXIS 815, at *3-5 (Bankr. E.D.N.Y. Mar. 16, 2015).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE NOT REQUIRED

The Court is not stating findings of facts and conclusions of law because Rule 52(a)(3) of the Federal Rules of Civil Procedure (the "Federal Rules"), incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), does not so require in ruling on a motion for summary judgment.

## BACKGROUND AND PROCEDURAL HISTORY[1]

---

[1] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the parties and the public dockets in this case.  Local Bankruptcy Rule 7056-1 requires that a party seeking summary judgment file a statement of facts the party alleges to be without a genuine dispute, and that each fact be supported by a citation to admissible evidence in the summary judgment record as required by Rule 56(c) of the Federal Rules. *See* FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1.  Similarly, facts alleged by a party opposing summary judgment must be set out in a LBR 7056-1 statement supported by admissible testimonial or documentary evidence, and with citation to conflicting testimonial or documentary evidence as required by Rule 56(c); a party may not simply deny alleged material facts by a conclusory statement, or without citation to admissible evidence.  This Court has not considered any fact alleged by Plaintiffs and Defendant which is not properly sourced or supported.  This Court has also accepted as true properly supported facts alleged by Plaintiffs and Defendant which have not been properly refuted or challenged by Plaintiffs or Defendant. *See* FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1; *Meredith Corp. v. Sesac, LLC*, 1 F. Supp. 3d 180, 186 n.3 (S.D.N.Y. 2014).

### *General Background*

On April 3, 2013, Debtor Richard Kern ("Debtor" or "Defendant") filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").[2]  [case no. 13-71700; dkt item 1]

On September 17, 2013, Debtor's chapter 11 case was converted to a case under chapter 7. [case no. 13-71700; dkt item 76]

On January 29, 2014, Debtor received his discharge under chapter 7.  [case no. 13-71700; dkt item 96]

On January 31, 2014, the Clerk of the Court notified all creditors of Debtor's discharge. [case no. 13-71700; dkt item 97]

### *The Adversary Proceeding*

On November 7, 2013, Plaintiffs the Board of Trustees of the Sheet Metal Workers International Association Local Union No. 28 Trust Funds ("Trustees" of the "Benefit Funds" or "Plaintiffs"), timely commenced this adversary proceeding by filing a complaint seeking a determination of non-dischargeability under §§ 523(a)(4) and (6) (the "Complaint").  [dkt item 1]

On December 9, 2013, Defendant filed an answer to the Complaint asserting general denials.  [dkt item 3]

Because the parties agreed that a matter then *sub judice* with this Court in a related matter could affect the outcome here, on September 26, 2014, the Court approved a stipulation deferring proceedings until after the Court decided summary judgment motions in adversary proceeding *Sheet Metal Workers' National Pension Fund v. Richard Kern*, 13-08096-AST ("*Kern I*").  [dkt

---

[2] Unless otherwise indicated, all statutory references herein are to the Bankruptcy Code.

item 17]  In *Kern I*, different benefit funds alleged this same Debtor committed defalcation while acting in his fiduciary capacity when he failed to make certain employer contributions.

On December 10, 2015, the Court entered a Decision and Order in *Kern I* determining that Debtor did not have non-dischargeability liability under § 523(a)(4).  *Sheet Metal Workers' National Pension Fund v. Kern (In re Kern)*, 542 B.R. 87 (Bankr. E.D.N.Y. 2015).

The parties thereafter filed competing motions for summary judgment (together, the "Motions").[3]  On June 24, 2016, Defendant filed a letter that the Motions were fully submitted to the Court.  [dkt item 33]

## UNDISPUTED FACTS AND MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

The Benefit Funds are and were employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3).[4]  Defendant was the principal owner of the now defunct closely held corporation, Cool Sheetmetal, Inc. ("CSI").[5]  CSI was an employer within the meaning of

---

[3] On April 15, 2016, Plaintiffs timely filed their motion for summary judgment (the "Summary Judgment Motion"). [dkt item 23] On May 17, 2016, Defendant filed his Cross-Motion for Summary Judgment.  [dkt item 24]
On June 3, 2016, Plaintiffs filed their Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Summary Judgment Motion and in Opposition to Defendant's Cross-Motion for Summary Judgment ("Plaintiffs' Opposition"). [dkt items 27, 28, and 29] On June 10, 2016, the Court entered a Consent Order extending Defendant's time to file his Reply in support of his Cross-Motion for Summary Judgment from June 17, 2016 to June 24, 2016.  [dkt item 31] On June 24, 2016, Defendant filed his Reply Memorandum of Law in Further Support of his Cross-Motion for Summary Judgment.  [dkt item 32]

[4] *See* Plaintiffs' Rule 7056 Statement, ¶ 1 ("Plaintiffs' Statement") [dkt item 23-2]; Declaration of Jeffrey S. Dubin [dkt item 23-3] ("Dubin Decl."), ¶ 13; Collective Bargaining Agreements, August 1, 2005 to July 31, 2009, August 1, 2009 to July 31, 2011 and September 15, 2011 to July 31, 2014, Article XII, Section ("Sec.") 19, Dubin Decl., Exhibits C, D and E.

[5] *See* Plaintiffs' Statement, ¶ 3; Deposition ("Depo.") transcript of Mr. Kern dated May 13, 2014, Dubin Decl., Exhibit V (pp. 27-29); Defendant's Counter Rule 7056 Statement, ¶¶ 5, 10 ("Defendant's Counter-Statement").  [dkt item 24-3]

Section 3(5) of ERISA, 29 U.S.C. § 1002(5).[6]  CSI entered into contracts which, *inter alia*, provided for contributions to be made by CSI to the Benefit Funds.[7]

The Benefit Funds are expressly third party beneficiaries of the CBA's.[8]

The CBA's provide that the employer shall pay a set amount of money for each hour payable to all applicable employees, to be used exclusively to provide paid vacations for eligible employees:

> …the **Employer** shall pay three dollars and twenty-five cents ($3.25) for each hour paid for all employees covered by this Agreement.  **The contributions of the Employers shall be used exclusively to provide paid vacations for eligible employees**.

(emphasis added) (the "Vacation Fund").[9]  The Vacation Fund contributions are an employer obligation; the CBA's do not provide, upon written authorization or otherwise, that the employer may deduct money from employee paychecks for Vacation Fund contributions.

Tom Irwin was an employee of CSI.[10]  During the pay periods ending April 7, 2010 through May 12, 2010, CSI deducted Vacation Fund contributions from Mr. Irwin's paycheck.[11]

---

[6] *See* Plaintiffs' Statement, ¶ 4; Dubin Decl., ¶ 13 (citing Exhibits C, D and E of the Dubin Decl.); Defendant's Counter-Statement, ¶¶ 2-6.

[7] *See* Plaintiffs' Statement, ¶ 5; Article XII A, Sec. 1-6 of the Collective Bargaining Agreement dated August 1, 2005 to July 31, 2009 ("2005-2009"); Article XII A, Sec. 1-6 of the Collective Bargaining Agreement dated August 1, 2009 to July 31, 2011 ("2009-2011"); Article XII A, Sec. 1-6 of the Collective Bargaining Agreement dated September 15, 2011 to July 31, 2014 ("2011-2014"); Dubin Decl., Exhibits C, D and E; Defendant's Counter-Statement, ¶¶ 2-3.

[8] *See* Dubin Decl., ¶ 14 (citing Exhibits C, D and E of the Dubin Decl.).  Said contracts incorporate by reference the provisions of the Agreements and Declarations of Trust of the Local 28 Funds.  Plaintiffs' Statement, ¶ 6; 2005-2009, Article XII A., Sec. 19 A; 2009-2011, Article XII A., Sec. 19 A; 2011-2014, Article XII A., Sec. 19 A; Dubin Decl., Exhibits C, D and E.

[9] *See* Plaintiffs' Statement, ¶ 18; 2005-2009, Article XII A, Sec. 1B; 2009-2011, Article XII A, Sec. 1B; 2011-2016, Article XII A, Sec. 1B; Dubin Decl., Exhibits C, D, and E.

[10] *See* Declaration of Glenn Camisa, ¶ 13 ("Camisa Declaration").  [dkt item 29]

[11] *Id.*

The CBA's provide that Vacation Fund contributions are vested in the Trustees of the Benefit Fund:

> **contributions** are considered assets of the respective Funds and **title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds.** The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer.

(emphasis added).[12]

Additionally, the CBA's provide for a union assessment to be paid by CSI from monies deducted from employee paychecks:

> The Employer agrees to **deduct from the wages of its employees, upon written authorization from the employees**, two percent (2%) of the total wage and fringe benefit package plus organizing contribution of five cents ($.05) for each hour paid ("**assessment**"). Assessment deductions shall be remitted weekly to the Financial Secretary of Local Union No. 28 together with a list of names of employees to whom said monies are to be credited.  The Union shall have the right to withdraw manpower from the Employer, in addition to all other rights and remedies it might have, for failure to remit said monies weekly.

(emphasis added) (the "Union Assessment").[13]

The CBA's provide that the Union Assessment is an asset of the General Fund:

> Dues and assessments are considered assets of the General Fund (Union) and title to all monies paid to and/or due and owing to the Union shall be vested in and remain exclusively in the Union.[14]

---

[12] *See* Plaintiffs' Statement, ¶ 8; 2005-2009, Article XII A., Sec. 19.B.; 2009-2011, Article XII A., Sec. 19.B.; 2011-2014; Article XII A., Sec. 19.B., Dubin, Decl., Exhibits C, D, and E.

[13] *See* Plaintiffs' Statement, ¶ 15; 2005-2009, Article IV, Section 7A; 2009-2011, Article IV, Section 7A; 2011-2014, Article IV, Section 7A; Dubin Decl., Exhibits C, D, and E.

[14] *See* Plaintiffs' Statement, ¶ 15; 2005-2009, Article IV, Sec. 7B; 2009-2011, Article IV, Sec. 7B; 2011-2014, Article IV, Sec. 7B; Dubin Decl., Exhibits C, D, and E.

Additionally, the CBA's provide for a Political Action League deduction from employee paychecks of $.05 and $.07 per hour:

> The Employer, upon written authorization from the employee, shall deduct from wages seven cents ($.07) per hour and remit same to the **Local Union No. 28 Political Action League. The Union has a right to reallocate as it sees fit**. Contributions to the Political Action League are not deductible for Federal Income Tax purposes.

(emphasis added) (the "PAL").[15]

As the principal owner of CSI, Richard Kern exercised authority, control and management over the disposition of assets of CSI, and had decision making authority with respect to whether or not to pay the obligations of CSI, and determined whether or not CSI made contributions to the Benefit Funds.[16]

While it was operating, CSI periodically fell behind in making contributions due to the Benefit Funds.[17]  On November 18, 2009, CSI and Kern entered into a settlement agreement with Plaintiffs ("Settlement Agreement"), in which CSI and Kern agreed to pay Plaintiffs the amount of $3,725,612.45, representing contributions due to the Plaintiffs from the period of the week ending December 13, 2006 through September 23, 2009; incident thereto, CSI and Kern signed an affidavit of confession of judgment.[18]  On September 2, 2010, a judgment by confession was entered against CSI and Kern in the amount of $3,037,156.17 (the "Judgment").[19]  On or about

---

[15] *See* Plaintiffs' Statement, ¶ 16; 2005-2009, Article XV, Sec. 6; Dubin Decl., Exhibit C.  The 2009 and 2011 CBA's provide for a PAL Deduction of five cents ($.05) per hour.  *See* Plaintiffs' Statement, ¶ 17; 2009-2011, Article XV, Sec. 6; 2011-2014, Article XVI, Sec. 6; Dubin Decl., Exhibits D and E.

[16] *See* Plaintiffs' Statement, ¶¶ 10, 12; Depo. transcript of Mr. Kern pp. 30-22; Dubin Decl., Exhibit V.

[17] CSI continued to pay portions of the contributions through early 2012.  *See* Defendant's Counter-Statement, ¶ 3, citing Affidavit of Defendant Richard Kern in Support of Defendant's Cross-Motion for Summary Judgment ("Kern Aff."), ¶¶ 8-13, 33. [dkt item 24-4]

[18] *See* Defendant's Counter-Statement, ¶ 6 (citing Kern Aff., ¶¶ 16-18); Dubin Decl., Exhibits W, X, and Y.

[19] Dubin Decl., Exhibit W; Kern Aff., ¶ 19.

January 3, 2012, a partial satisfaction of the Judgment was filed with the state court, leaving a balance due of $2,306,237.24.[20]

On December 1, 2011, CSI was terminated as a Sheet Metal Workers' National Pension Fund contributing employer.[21]  As a result, on December 13, 2011, the Local Union 28 prohibited CSI from employing Local Union 28 members (the "Termination").[22]  This Termination led to a loss of union employees and contributed to CSI's inability to continue its business operations.[23]

From September 16, 2010, to February 7, 2012, Debtor and his wife, Sharon Kern, contributed $622,838.00 to CSI.[24]

### *Positions of the Parties*

The Plaintiffs argue that the facts here are different than in *Kern I*; they are correct.  In *Kern I*, this Court determined that Debtor's failure to cause CSI to make employer contributions to the benefit funds at issue there from CSI's own general assets did not give rise to a defalcation while acting in his fiduciary capacity.  The Court noted it "is not faced with a fiduciary absconding with or misusing funds that had been contributed by CSI's employees to be paid on to the Benefit Funds, or funds which were deducted from the employees' paychecks to be paid on to the Benefit Funds."  *Kern*, 542 B.R. at 98.

Plaintiffs contend Kern committed defalcation while acting as a fiduciary here when he deducted money from CSI employee paychecks and failed to remit such monies to the Benefit

---

[20] Dubin Decl., Exhibit Y; Kern Aff., ¶ 19.

[21] *See* Defendant's Counter-Statement, ¶ 4 (citing Kern Aff., ¶¶ 13-15, Exhibits 1 & 2).

[22] *Id.*

[23] *See* Defendant's Counter-Statement, ¶ 5, citing Kern Aff. ¶¶ 13-15.

[24] *See* Defendant's Counter-Statement, ¶ 14, citing Kern Aff. ¶¶ 29-31.

Funds.    Plaintiffs filed a Declaration of Glenn Camisa, the Plaintiffs' Fund Manager, demonstrating that Debtor deducted money from employee paychecks for the Vacation Fund, Union Assessment, and PAL, and that Mr. Irwin and other CSI employees paid federal and state taxes on the Vacation Fund as taxable employer contributions.  [dkt item 29]  In support, attached to the Camisa Declaration are: a Local Union 28 wage and fringe benefit sheet effective July 31, 2008 through January 28, 2009, which shows that the amount of employee taxable wages is the total of the base rate of $44.40 per hour plus the Vacation Fund contribution thereon of $3.25; and CSI pay statements for Mr. Irwin for the pay periods ending April 7, 2010 through May 12, 2010, which show that Mr. Irwin's pre-tax gross income includes his (1) earnings of $45.40 per hour; and (2) "other gross," which appears to be this $3.25 per hour.  Additionally, the pay statements show CSI deducted money from Mr. Irwin's after-tax income in the amount of approximately $1.82 per hour for the Union Assessment; $.05 per hour for the PAL; and $3.25 per hour for the Vacation Fund.  Thus, according to Mr. Camisa, CSI included the Vacation Fund contributions in Mr. Irwin's gross income; he paid state and federal taxes on that income; and CSI then deducted the Vacation Funds from Mr. Irwin's after-tax income.

Defendant contends the monies Plaintiffs are seeking to find non-dischargeable arise from unpaid fringe benefit contributions that were not deducted from employee paychecks, and even if Defendant deducted money from employee paychecks, the deducted money was earmarked for non-ERISA funds that were not assets of the Benefit Funds and therefore not an express or technical trust under § 523(a)(4) of the Bankruptcy Code.[25]

---

[25] As discussed below, the Court finds unpersuasive Defendant's assertion that Plaintiffs' Complaint fails to allege Defendant deducted money from employee paychecks and does not meet the Rule 8 pleading requirement.

## LEGAL ANALYSIS

### I.    Summary Judgment Standard

Rule 56(c) of the Federal Rules, as incorporated by Bankruptcy Rule 7056(c), provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995); *Burrell v. City Univ. of New York*, 894 F. Supp. 750, 757 (S.D.N.Y. 1995). "If, when viewing the evidence produced in the light most favorable to the non-movant, there is

no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001); *see Burrell*, 894 F. Supp. at 758 (citing *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991)); *see also In re Oak Rock Fin., LLC*, 527 B.R. 105, 113 (Bankr. E.D.N.Y. 2015).

## II.     *Plaintiffs' Complaint*

Although there is some discrepancy between the relief sought in the Complaint and that sought in the Summary Judgment Motion, the Rule 8 pleading requirement is "extremely permissive." *Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Philip Gen. Const.*, No. 05CV1665(NG)(RLM), 2007 WL 3124612, at *4 (E.D.N.Y. Oct. 23, 2007). Dismissal of a claim as inadequately pled is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

A complaint will be deemed sufficient if it satisfies the general notice pleading requirements set forth in Rule 8(a)(2). Rule 8(a)(2) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see City of Clinton v. Pilgrim's Pride Corp.*, 653 F. Supp. 2d 669, 671 (N.D. Tex. 2009); *Bunker Exploration Co. v. Clarke (In re Bunker Exploration Co.)*, 42 B.R. 297, 300 (Bankr. W.D. Okla. 1984).

While pleadings are to be liberally construed in favor of the plaintiff, the deference accorded to a plaintiff is not without limitation. A defendant is entitled to fair notice of a plaintiff's claim and the grounds upon which it rests so as to prepare an appropriate defense. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Thus, in drafting a

complaint, a plaintiff's obligation to set forth the grounds for entitlement to relief requires more than mere labels, conclusions, or some overly generalized statement that a plaintiff has a claim against the defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Naked assertions devoid of factual enhancements will not suffice. *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level," and create a plausible entitlement for such relief. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *Grow Up Japan, Inc. v. Yoshida (In re Yoshida)*, 435 B.R. 102, 107 (Bankr. E.D.N.Y. 2010).

Defendant essentially contends the Complaint is deficient for two reasons: it does not allege Kern deducted money from employee paychecks, and it does not allege the debt that Plaintiffs seek to find non-dischargeable arises from money deducted from employee paychecks.

First, although the Complaint does not specifically allege that Kern deducted money from employee paychecks, the Complaint gives fair notice of Plaintiffs' claim of Kern's fiduciary defalcation and the grounds upon which it rests so as to prepare an appropriate defense. Under Count One of the Complaint, Plaintiffs plead that Kern's confessed debt is not dischargeable under § 523(a)(4) because he (1) acted as a fiduciary in his capacity to direct trust assets to the Plaintiffs for the benefit of the Benefit Funds; and (2) breached his fiduciary duty to the Benefit Funds as a result of his failure to turn over Benefit Fund assets as required by the CBA's. The Complaint satisfies the pleading requirement because Kern's ability to direct trust assets, as a fiduciary, would include his capacity to deduct money from employee paychecks, regardless of whether the CBA's authorized him to do so or not.

Second, even if Plaintiffs' Complaint did not adequately allege that Kern deducted money from employee paychecks, or that the alleged deductions gave rise to a non-dischargeable debt under the Settlement Agreement and Judgment, the Court may conform the pleadings to the

evidence before it and deem the Complaint amended by the summary judgment pleadings.  *Liberty Mutual Ins. Co. v. State of New York (In re Citron)*, No. 08-71442-AST, 2010 WL 2978062, at *1 (Bankr. E.D.N.Y. July 23, 2010).

Second Circuit case law and Rule 15 of the Federal Rules, which is incorporated by Rule 7015 of the Bankruptcy Rules, support amending the Complaint.  *See Clomon v. Jackson*, 988 F.2d 1314, 1323 (2d Cir. 1993).  "The function of the pleadings is to give opposing parties notice of the facts on which the pleader will rely, and, in the absence of prejudice to the opposing party, the court may allow the pleadings to be amended to conform them to the evidence at any time, even after judgment."  *Van Alstyne v. Ackerley Group, Inc.*, No. 00–9340, 2001 WL 540379, *155 (2d Cir. May 21, 2001); *see also* FED. R. CIV. P. 15(b).[26]  "[W]hen deciding a motion for summary judgment the court may evaluate not just the issues presently tendered by the pleadings but those which can reasonably be raised in an amended pleading."  *Moreno v. Schwartz (In re Schwartz)*, 36 B.R. 355, 357 (Bankr. E.D.N.Y. 1984).  Thus, an issue raised for the first time in a motion for summary judgment may start the amendment process.  *See Breeden v. Bennett (In re Bennett Funding Group, Inc.)*, 220 B.R. 743, 752-53 (Bankr. N.D.N.Y. 1997); *see also Seaboard Terminals Corp. v. Standard Oil Co.*, 104 F.2d 659 (2d Cir. 1939).

Therefore, this Court overrules Kern's argument that Plaintiffs may not claim that he committed defalcation when he failed to remit monies deducted from employee wages.  The Court

---

[26] (b) Amendments During and After Trial.

(1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

(2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unplead issue. But failure to amend does not affect the result of the trial of that issue.

finds that justice requires the pleadings to be amended to conform to the evidence, that Defendant would not be prejudiced by the amendment, and that such amendment is reasonable. On November 7, 2013, Plaintiffs commenced this adversary proceeding and pursuant to the *Adversary Pre-trial Scheduling Order*, the parties were to conclude discovery by August 4, 2014. Both parties entered into a stipulation requesting the Court defer issuing an amended scheduling order until after the Court's decision in *Kern I*. By entering into the stipulation, both parties accepted that the forthcoming *Kern I* decision would eventually provide guidance on legal issues and their litigation strategy, as is now evident throughout Plaintiffs' and Defendant's Motions. Kern cannot claim surprise or prejudice by Plaintiffs' amended claim under § 523(a)(4). The Complaint put Kern on notice that Plaintiffs were seeking to find certain debts arising from unpaid Benefit Fund contributions to be non-dischargeable; the amended Complaint does just that. Kern's defense to Plaintiffs' claims was that he had not acted with culpable intent, not that CSI actually made contributions to the Benefit Funds. The Court is not persuaded by Kern's contention that he did not have notice of the possibility of liability for deducting contributions from employee paychecks and failing to pay those monies over.

Thus, the Court deems the Complaint amended to include the claim for non-dischargeability under § 523(a)(4) that Kern committed fiduciary defalcation when CSI deducted contributions from the employees' paychecks and did not remit such deductions to the Benefit Funds, for the time period of December 13, 2006 through the Termination of CSI on December 13, 2011. Further, such amendments will relate back under Rule 15 of the Federal Rules to the date the Complaint was filed, which was November 7, 2013. Therefore, all of Plaintiffs' claims asserted in the summary judgment pleadings are properly before the Court.

### III.    Analysis of § 523(a)(4)

Plaintiffs assert the CBA's and Trust Agreement, as defined herein, create an express statutory trust for purposes of § 523(a)(4); that an ERISA fiduciary is a per se fiduciary for purposes of § 523(a)(4); and that defalcation required under the *Bullock v. Bankchampaign,* standard is satisfied here.  133 S. Ct. 1754 (2013).

Section 523(a)(4) of the Bankruptcy Code provides that a "discharge under Section 727 ... of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).

Exceptions to discharge under § 523(a) must be strictly construed in favor of the debtor in order to comply with the "fresh start" policy underlying the Bankruptcy Code.  *Grogan v. Garner,* 498 U.S. 279, 286 (1991); *Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 76 (Bankr. E.D.N.Y. 2005).  As the Supreme Court stated, "exceptions to discharge 'should be confined to those plainly expressed.' " *Bullock*, 133 S. Ct. at 1760 (quoting *Kawaauhau v. Geiger,* 523 U.S. 57 (1998)). The creditor bears the burden of proving each element of its cause of action by a preponderance of the evidence.  *Grogan,* 498 U.S. at 287; *Duncan,* 331 B.R. at 76–77; *Chitester v. Watterson (In re Watterson),* 524 B.R. 445 (Bankr. E.D.N.Y. 2015); *Kern*, 542 B.R. at 95.

A creditor must satisfy three elements to meet the fiduciary defalcation exception to dischargeability under § 523(a)(4): (1) the existence of an express or technical trust involving the entrusting of money or other property for the benefit of another; (2) debtor must have acted in a fiduciary capacity with respect to the trust; and (3) the debt must arise from a defalcation committed by debtor.  *Duncan,* 331 B.R. at 77; *Watterson,* 524 B.R. at 451.  As is further discussed below, the Supreme Court recently stated that defalcation "includes a culpable state of mind ....

one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock* 133 S. Ct. at 1757; *Kern*, 542 B.R. at 95.

### a.   Express or Technical Trust

Section 523(a)(4) of the Bankruptcy Code applies only to express or technical trusts, not to constructive trusts, implied trusts, or trusts implied on the basis of wrongful conduct. *Duncan,* 331 B.R. at 77 (citations omitted); *Watterson,* 524 B.R. at 451; *Kern*, 542 B.R. at 95. To establish the existence of an express statutory trust, plaintiffs must show that property or money was entrusted to a "trustee," that a statute creates or identifies a "fiduciary" duty, and that the trust was in place when the defalcation giving rise to the debt occurred. *Duncan*, 331 B.R. at 77 (citing *Trustees of the Colorado Ironworkers Pension Fund v. Gunter (In re Gunter)*, 304 B.R. 458. 460-61 (Bankr. D. Colo. 2003) and *Citik Ka Wah Bank Ltd. v. Wong (In re Wong)*, 291 B.R. 266, 278 (Bankr. S.D.N.Y. 2003)); *Watterson*, 524 B.R. at 451; *Kern*, 542 B.R. at 95.

In *Firestone Tire & Rubber Co. v. Bruch,* the Supreme Court noted that "ERISA abounds with the language and terminology of trust law." 489 U.S. 101, 110 (1989); *see also Duncan,* 331 B.R. at 77 (citing *Friedlander v. Doherty,* 851 F. Supp. 515, 520 (N.D.N.Y. 1994)) ("Both the language and the legislative history of ERISA suggest that Congress intended traditional concepts of trust law to be applied to cases brought under ERISA."). As the *Duncan* court noted, terms such as "participant," "beneficiary," "fiduciary," and "trustee," which arise from trust law, appear throughout ERISA. *Duncan,* 331 B.R. at 77-78 (citing 29 U.S.C. §§ 1002(7) (participant); 1002(8) (beneficiary); 1002(21)(A) (fiduciary); 1103(a) (trustee)).

ERISA Section 403(a) requires that "all assets of an employee benefit plan shall be held in trust by one or more trustees." 29 U.S.C. § 1103(a). "In addition, ERISA provides that the assets of an employee benefit plan 'shall be held for the exclusive purposes of providing benefits to

participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.' " *Duncan,* 331 B.R. 77-78 (quoting 29 U.S.C. § 1103(c)); *Kern,* 542 B.R. at 95.

### i. Non-deducted Unpaid Contributions

In *Kern I,* those plaintiffs were seeking to find unpaid employer contributions due to the National Fund to be non-dischargeable; those plaintiffs did not allege Kern deducted the contributions from employee paychecks but rather those obligations were general obligations of CSI. One issue before the Court was whether the unpaid contributions due to the National Fund were assets of the trust fund. In support of their motion for summary judgement, the *Kern I* plaintiffs did not cite to an ERISA provision that provided general CSI funds were assets of the trust funds but instead relied on the language in the applicable CBA's that provided that "[e]mployer contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective funds."[27]    *Kern,* 542 B.R. at 98-99. The Court determined that employer contributions that were due to the National Fund were not trust assets in regard to every dollar collected or received by CSI. *Id.* Additionally, "[p]laintiffs' arguments would essentially elevate the general unsecured right of the Benefits Funds over the rights of secured creditors who have liens against accounts receivables and the cash proceeds thereof." *Id.* at 99. Thus, Kern was held to not have committed defalcation in regard to those unpaid contributions; similarly here, Kern has not committed fiduciary defalcation as to the contributions due to the Benefit Funds that he did not deduct from employee paychecks.

---

[27] The plaintiffs in *Kern I* were the National Benefit Fund, whereas here, the Plaintiffs are the Local Benefit Fund. The applicable CBA's have different sections governing the terms of National Benefit Funds and Local Benefit Funds. However, each section governing each of the benefit funds, contains the same language that employer contributions due to the Benefit Fund is an asset of the respective fund. Thus, the analysis of whether non-deducted money due from the employer are an asset of the plan is the same for the national and local funds.

ii.      **Union Assessment and PAL**

Defendant contends that the Union Assessment and PAL are not part of ERISA employee benefit plans or trusts, and their dues are not assets of the Benefit Funds.  Plaintiffs have not established that the money deducted from employee paychecks for the Union Assessment and PAL were held in a statutory trust.[28]

Under ERISA, money deducted from employee paychecks become plan assets, except for union dues:

> the assets of the plan include amounts (***other than union dues***) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer…

29 C.F.R. § 2510.3–102(a)(1) (emphasis added); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir. 1997) ("It is undisputed that the employees' contributions to the Funds, but not the Union dues and assessments, were plan assets governed by ERISA."); *Gunter*, 304 B.R. at 460 n.1 ("Union dues are specifically excluded from the statutory trusts created by ERISA."); *see W. Va. Laborers' Pension Trust Fund v. Owens Pipeline Serv., LLC*, No. 2:10-cv-00131, 2011 U.S. Dist. LEXIS 133407, at *4 (S.D. W. Va. Nov. 18, 2011) (finding that the determination of whether union dues were a plan asset was critical in deciding whether under ERISA an individual acted as a fiduciary in regard to the union dues and ultimately determining that union dues withheld from employees' wages but not paid to the plaintiffs were not a plan asset).

Additionally, the applicable CBA's specifically do not include the Union Assessment and PAL as assets of the respective Benefit Funds.  The Benefits Funds, which are established in the CBA's Article XII, provide that all monies owed to the funds shall be vested "in the Trustees of the respective funds;" however, Article XII does not include the PAL or Union Assessments.  *See*

---

[28] In *Kern I*, the plaintiffs did not allege that a statutory trust existed in regard to union dues, assessments, or the PAL.

Dubin Decl., Exhibits C, D, and E. Those two funds are established in different articles of the CBA's (Article IV, XV and in the 2011 CBA, XVI) which do not define the Union Assessment as an asset of the plan or as a trust fund, but rather vests title to the Union Assessment in the Union, not these Trustees. Additionally, as the CBA's do not specifically identify in whom the PAL funds will be vested, the PAL funds are not specifically vested in a trust or a trustee, and Section Six provides the Union with authority to reallocate the PAL money as it sees fit; thus, the Union, not these Trustees, control the PAL funds. Unlike the Vacation Funds, the PAL and Union Assessment money is not directed into a trust fund and the CBA's do not reference or incorporate a trust in which the PAL and Union Assessment are to be held.

Therefore, the monies deducted from the employees' paychecks for the PAL and Union Assessment are not "plan assets" under ERISA or the CBA's. While Kern was required to remit the PAL and Union Assessment money to the Union entities, and while he controlled the PAL and Union Assessment money that CSI allegedly deducted from paychecks, the sums withheld were not a plan asset of the Benefit Funds administered by these Plaintiffs. A mere contractual relationship is not enough to establish the existence of a fiduciary relationship. *Bd. of Trustees v. Parker (In re Parker)*, 388 B.R. 11, 18 (Bankr. N.D.N.Y. 2008). Thus, Kern could not have acted as a fiduciary in regards to the monies deducted from the employee paychecks for PAL and the Union Assessment.

### iii.  Deducted Vacation Fund Money

A statutory trust did exist in regard to the money deducted from employee paychecks for the Vacation Fund; the money was entrusted to a trustee; and the trust was in place when the defalcation occurred. Defendant essentially asserts that because the Vacation Funds were deducted from employee paychecks, rather than contributed directly from CSI's own funds to the Benefit

Funds, a statutory trust did not exist in regard to the deducted Vacation Fund monies.  However, the money deducted for the Vacation Fund was an ERISA plan asset; ERISA defines assets of a plan to include money a participant has withheld from his wages by an employer, except union dues.  29 C.F.R. § 2510.3–102.  "Amounts withheld from wages by an employer for contributions to a vacation or pension fund are plan assets of an ERISA employee welfare fund."  *Bricklayers Ins. v. FJW, Inc.*, No. 15-CV-887 (SJ) (SMG), 2016 WL 4691293, at *3 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub nom. Bricklayers Ins. & Welfare Fund v. FJW, Inc.*, No. 15-CV-887 (SJ) (SMG), 2016 WL 4688857 (E.D.N.Y. Sept. 7, 2016); *see Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008) (healthcare benefit premiums became fund assets once they were withheld from employee paychecks).

The CBA's provide for the Vacation Fund and requires the employer to contribute $3.25 for each hour paid for employees covered under the agreement.  The Vacation Fund is contained in Article XII of the CBA's.  The title of Article XII is "Fringe Benefit Funds."  Section 1.B. states that the money for the Vacation Fund shall be an employer contribution.  During the pay periods ending April 7, 2010 through May 12, 2010, CSI deducted Vacation Fund contributions from Mr. Irwin's paycheck which were ERISA plan assets.

The Vacation Fund contributions were entrusted to a trustee.  Under the CBA's, Section 19. A., the "Employer agrees to be bound by the provisions of the…Agreement and Declaration of Trust governing the various Trust Funds of Local Union No. 28 Benefit Funds…."  In turn the Agreement and Declaration of Trust (the "Trust Agreement"), entered into as of August 1, 1988, between Sheet Metal Workers International Association, Local Union No. 28 and the employers who have entered into CBA's, requires participation and contributions to the trust fund.  [dkt item

23-22]  Under Article V, Section 1, of the Trust Agreement, the trust fund and welfare plan shall "[a]ccept and receive all contributions and shall hold … and administer the same as part of the Trust Fund for the uses, purposes and trusts herein provided."  Plaintiffs have submitted evidence that CSI deducted money from employee paychecks in April and May of 2010; thus the trust existed at the time of the deduction of these funds.

Defendant asserts that unpaid employer contributions can never be ERISA "plan assets," and that an ERISA fund only has a claim for unpaid contributions against the debtor-employer.  In support, Defendant cites to *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009), which notes generally that employer payments owed to a benefit fund are not considered assets of the plan.  However, the Second Circuit in *Halpin* emphasized that parties to an agreement are free to contractually define unpaid contributions as plan assets.  *Sullivan v. M.A.C. Design Corp.*, No. 14-CV-1846 (NGG) (VVP), 2015 WL 5518456, at *3 (E.D.N.Y. Sept. 17, 2015) ("In the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan.") (citing *Halpin*, 566 F.3d at 287); *see also Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works Inc.*, No. 10-CV-1371 (KBF), 2012 WL 32237, at *4 (S.D.N.Y. Jan. 5, 2012) (noting that "the Second Circuit ... is clear" that its general rule "only appl[ies] in the absence of a specific control provision to the contrary.").  Here, the parties entered into the CBA's in which a controlling provision governs these contributions as plan assets.

### b. *Fiduciary*

The fiduciary relationship necessary for a denial of discharge under § 523(a)(4) is determined by federal law.  *See Bullock*, 133 S. Ct. at 1759*; Petrucelli v. D'Abrosca (In re D'Abrosca)*, No. 09-11638, Adv. No. 09-01070, BAP No. 10-062, 2011 Bankr. LEXIS 3007, at *5 (B.A.P. 1st Cir. Aug. 10, 2011); *Duncan*, 331 B.R. at 80; *see also Zohlman v. Zoldan (In re*

*Zoldan)*, 226 B.R. 767, 772 (S.D.N.Y. 1998).   ERISA provides two mechanisms to establish

fiduciary status: (1) an individual or entity may be a fiduciary if named as such under an ERISA

plan; *see* 29 U.S.C. § 1102(a)(2); or (2) ERISA provides for a functional test by which a person or

entity may be held to be an ERISA fiduciary, as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he
> [or she] exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises any
> authority or control respecting management or disposition of its
> assets . . . or (iii) he [or she] has any discretionary authority or
> discretionary responsibility in the administration of the plan.

29 U.S.C. § 1002(21)(A); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (Supreme

Court described ERISA's definition of a fiduciary "not in terms of formal trusteeship, but in

functional terms of control and authority over the plan"); *LoPresti*, at 40.   In *LoPresti*, the Second

Circuit determined that a company's president and majority shareholder was an ERISA fiduciary

because he had a role in determining which bills to pay, which creditors were to be paid out of the

company's general account, and when they would be paid.   *See also Blatt v. Marshall and

Lassman*, 812 F.2d 810, 812-13 (2d Cir. 1987); *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir.

1984); *Duncan*, 331 B.R. at 80 (" '[F]iduciary status … may result from the exercise of any

authority or control respecting management or disposition of [plan] assets.' ") (quoting *LoPresti*,

126 F.3d at 40); *Liss v. Smith*, 278, 302 (S.D.N.Y. 1998).

This Court in *Kern I* determined that an ERISA fiduciary is a fiduciary for § 523(a)(4)

purposes.  *Kern*, 542 B.R. at 98.  The Court also determined that Kern met the functional test under

ERISA and was therefore a fiduciary for purposes of § 523(a)(4).   Here, Plaintiffs allege Kern

exercised control over the plan when CSI deducted Vacation Fund money from employee

paychecks and failed to remit such money to the Benefit Funds.   Kern also meets the functional

test under ERISA and is a fiduciary for purposes of § 523(a)(4).

### c. *Defalcation While Acting in a Fiduciary Capacity*

Kern disputes that CSI deducted money from employee paychecks or that he had knowledge of the alleged deductions, and even if he did, the CBA's did not provide for CSI to deduct Vacation Funds from employee paychecks. Plaintiffs have submitted undisputed employee paychecks that show CSI deducted money, that these monies should have been earmarked for the Vacation Fund, and that fund is a fringe benefit under the CBA's and an asset of the Benefit Funds.

In *Bullock*, the Supreme Court articulated a uniform federal defalcation standard:

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). *See id.*, § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'wilful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.*, § 2.02(2)(c), at 226 (emphasis added).

*Bullock*, 133 S. Ct. at 1759-60. The *Bullock* standard is similar to that previously applied by the Second Circuit, which had defined defalcation as "conscious misbehavior or extreme recklessness." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68-69 (2d Cir. 2007) ("The standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable."); *see also Shao Ke v. Jianrong Wang*, No. 14-3824, 2015 WL 5805954, at *1 (2d Cir. Oct. 6, 2015) (defalcation under § 523(a)(4) requires a showing that the

faithless fiduciary committed an "intentional wrong," which incorporates a standard of conscious misbehavior or extreme recklessness).

Courts in the Second Circuit have held that a debtor's knowing failure to remit plan contributions deducted from employee paychecks is a defalcation under the *Hyman* test.  In *In re Mayo*, the court granted summary judgment to the plaintiffs on a non-dischargeability claim under § 523(a)(4) because defendant "did not pay into the various Funds the money that the CBA and the Local Agreement required him to withhold from wages or contribute to the Funds." *Trustees of the Iron Workers District Council of New England Pension, Health and Welfare, Annuity, Vacation, and Education Funds v. Mayo (In re Mayo)*, No. 04-1067, 2007 WL 2713064, at *11 (Bankr. D. Vt. Sept. 17, 2007).  The court found that defendant signed the CBA and had actual knowledge that he had a duty to pay certain amounts into the funds.  The court found the defendant's failure to make the requisite payments represented "a material and knowing breach of his fiduciary duty and constitutes the kind of 'knowing misconduct' contemplated by the Second Circuit's new defalcation standard." *Id*. (applying standard of intent from securities law cases to determine defalcation under § 523(a)(4) pursuant to *Hyman*).  *See also E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99, 107 (Bankr. E.D.N.Y. 2009) (following *Mayo* and finding an issue of material fact existed as to whether the defendant committed a defalcation and had actual knowledge of his fiduciary duties under the Perishable Agricultural Commodities Act).

Here, Plaintiffs have established that Kern had actual knowledge of his duties under the CBA's.  Kern admitted that CSI operated under the applicable provisions of the CBA's from 2005 until the Termination.  *See* Kern Depo. pp. 12-15.  Although Kern does not admit that he signed the CBA's with these Plaintiffs, he admitted that he signed numerous agreements and memorandum of understanding, including a memorandum of understanding on August 1, 2009, in

which CSI and these plaintiffs agreed to the CBA between Local 28 and CSI for the period of August 1, 2009 through July 31, 2011.  *See* Dubin Decl., Exhibit L.  Additionally, Plaintiffs submitted agreements signed by Kern that, among other things, referenced the applicable CBA's and stated "Nor shall anything herein alter the Fund's rights regarding the collection of benefit contributions from [CSI] under the collective bargaining agreement or otherwise."  *See* Dubin Decl., Exhibits M-R.

Kern would have been aware of any deductions CSI made from employee paychecks as he admitted that he "was the one who handled all of the day to day operations for the business, including overseeing of all jobs, sales of new jobs and general oversight of all the office functions of the company." *See* Kern Aff., ¶ 4.  Defendant seems to imply that even if CSI deducted Vacation Fund contributions from employee paychecks, the deducted money was no different than the plan contributions that CSI did not remit from its own general funds, which this Court found to be dischargeable in *Kern I.*  However, the fact that the CBA's do not provide for paycheck deductions for trust fund contributions yet CSI deducted those amounts anyway only bolsters Kern's defalcation.  Under the CBA's, the burden was on CSI as the employer to pay three dollars and twenty-five cents ($3.25) for each hour paid for all employees covered by the CBA's to be used "exclusively to provide paid vacations for eligible employees;" Kern for CSI decided to deduct the employees' money from their checks to make contributions to the plan for their vacations.  Kern recklessly disregarded an unjustifiable risk when he deviated from the terms of the CBA's and shifted CSI's financial obligations on to his employees.  More importantly, Kern misappropriated the deducted money when he caused CSI to not remit such money to the Benefit Funds.  Thus, he committed defalcation while acting in a fiduciary capacity as to the Vacation Fund.

## IV.    Analysis of § 523(a)(6)

In the Complaint, Plaintiffs assert a claim for relief against Kern for non-dischargeable liability under § 523(a)(6), alleging Kern "converted and used employee contributions for his own personal use" and was substantially certain that the Benefit Funds and its members would suffer injury as a result of his conduct.  Plaintiffs did not move for summary judgment in connection with their § 523(a)(6) claim.  However, Defendant moves for summary judgment on the § 523(a)(6) claim and argues Kern did not willfully and maliciously cause injury to anyone.  Plaintiffs do not address their § 523(a)(6) claim in any of their responses to Defendant's Cross-Motion for Summary Judgment, which Defendant argues is grounds for the Court to dismiss the claim with prejudice.

Even when there is no opposition to a motion for summary judgment, the Court must still reach a determination as to whether, as a matter of law, summary judgment should be granted.  *See Vt. Teddy Bear Co. v. 1–800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. N.Y. 2004) ("Although the failure to respond [to a motion for summary judgment] may allow the district court to accept the movant's factual assertions as true ... the moving party must still establish that the undisputed facts entitle him to 'a judgment as a matter of law[.]' ") (internal citations omitted); *Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, 472 F. Supp. 2d 385, 394 (E.D.N.Y. 2007); *Hudson United Bank v. Pena*, No. Civ. A. 03-0158, 2005 WL 736603 (E.D. Pa. Mar. 30, 2005); *Rahman v. Park (In re Park)*, No. 09-78622-DTE, 2011 WL 1344495, at *4 (Bankr. E.D.N.Y. Apr. 8, 2011).

Section 523(a)(6) provides that debts incurred "for willful and malicious injury by the debtor to another entity or the property of another entity" are not dischargeable.  11 U.S.C. § 523(a)(6).  The plaintiff bears the burden of demonstrating by a preponderance of the evidence that the debt arose from both a willful and malicious injury.  *Grogan*, 498 U.S. at 291.  The term

"willful" means "a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." *Geiger*, 523 U.S. at 61 (emphasis in original).  Reckless or negligent conduct will not satisfy § 523(a)(6)'s "willful" requirement.  *Id.*; *Curtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 26 (Bankr. E.D.N.Y. 2015).  Courts within the Second Circuit have found that if a debtor believes that an injury is substantially certain to result from his conduct, the debtor will be found to have possessed the requisite intent to injure required under *Geiger*.  *Ferrandina*, 533 B.R. at 26 (collecting cases).

The term "malicious" has been defined by the Second Circuit to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996); *Ferrandina*, 533 B.R. at 26. "Willful and malicious conversion clearly falls within" Section 523(a)(6).  *United Orient Bank v. Green*, 215 B.R. 916, 928 (S.D.N.Y. 1997), *aff'd*, 172 F.3d 38 (2d Cir. 1999); *Rozanksi v. Miga (In re Miga)*, Adv. No. 09-80066, 2011 WL 204896, at *5 (Bankr. N.D.N.Y. Jan. 21, 2011).  Under New York law, an action for conversion of money will lie where there is an obligation to return or otherwise treat in a particular manner the specific money in question.  *LoPresti*, 126 F.3d at 41 (citation omitted); *Parker*, 388 B.R. at 22.  Not all unlawful conversions of property, however, will give rise to relief under § 523(a)(6), because unlike a tort action, bankruptcy law requires a culpable state of mind and a specific motivation by the debtor in order for the conversion to be actionable.  *Miga*, 2011 WL 204896, at *5; *Parker*, 388 B.R. at 22.

Plaintiffs have not pleaded that Kern converted the contributions with fraudulent intent or specific wrongful motivation, nor have Plaintiffs demonstrated that Kern converted their property, the deducted monies, as opposed to monies that belonged to the employees from whom the monies were taken.  Additionally, Plaintiffs have not argued that or how the requisite intent to find a

fiduciary defalcation under § 523(a)(4) automatically satisfies the willful and malicious standards under § 523(a)(6).

Because Kern has established the absence of a genuine issue of material fact on the necessary elements of a willful and malicious injury to Plaintiffs, Defendant's Cross-Motion for Summary Judgement is granted as to the § 523(a)(6) claim for relief.

### V.      Public Policy is Inapplicable

This Court has conducted a "statutory, not a policy, analysis" and therefore, will not address the policy arguments asserted by the parties.  *Kern*, 542 B.R. at 100 (citing *In re Zair*, 535 B.R. 15, 18 (Bankr. E.D.N.Y. 2015), *rev'd*, *HSBC Bank USA, N.A. v. Zair*, 550 B.R. 188 (E.D.N.Y. 2016), *appeal dismissed*, No. 16-1648 (2d Cir. Dec. 7, 2016)).

## CONCLUSION

This Court concludes that Plaintiffs have established their entitlement to summary judgment in part and Kern has established his entitlement to summary judgment in part.  As such, Plaintiffs' claim that employer contributions due to the Benefit Funds that were not deducted from employee paychecks are non-dischargeable is denied as a matter of law and all claims in the Complaint relating to such contributions are dismissed.  Plaintiffs' claim that money Kern deducted from employee paychecks for the Union Assessment and PAL is non-dischargeable is denied and all claims in the Complaint relating to such deductions is dismissed.  Plaintiffs' request for summary judgment on their claim that money CSI deducted from employee paychecks for the Vacation Fund and did not remit to the Benefit Funds during the time period of the week ending December 13, 2006, through the date of the Termination on December 13, 2011 is non-dischargeable is granted, with the amount thereof to be determined at the time of trial.  Plaintiffs' claim that certain debts are non-dischargeable under § 523(a)(6) is dismissed.

The Court will schedule a trial to determine the non-dischargeable amount of money CSI deducted from employee paychecks for the Vacation Fund and did not remit to the Benefit Fund.



**Dated: April 9, 2017**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**